UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BORIS BROWN,<br><br>        Petitioner,<br><br>    v.<br><br>MARLYN KOPP, Superintendent, Sing Sing Correctional Facility,<br><br>        Respondent. | 24 Civ. 8271 (DEH)<br><br>**OPINION<br>AND ORDER** |

DALE E. HO, United States District Judge:

  Boris Brown was convicted of depraved indifference murder and criminal possession of a weapon in the second degree in the Supreme Court of the State of New York, New York County, and sentenced to 32 years to life imprisonment. Mem. Supp. Pet. for Writ of Habeas Corpus ("Pet'r's Mem.") at 1, ECF No. 2. He is serving his sentence at the Sing Sing Correctional Facility in New York. *Id.* He now petitions, pursuant to 28 U.S.C. § 2254, for a writ of habeas corpus. *Id.* In his Petition, Brown argues that his trial attorney was paid by a suspect to the crime, creating (1) an actual conflict of interest that (2) was not harmless, and (3) was not waived, thereby denying Brown his Sixth Amendment right to counsel. *Id.* at 13-19. For the reasons that follow, Brown's Petition is **DENIED** and **DISMISSED**.

## BACKGROUND

  On July 25, 2012, Boris Brown was convicted by a jury in New York County of depraved indifference murder and criminal possession of a weapon in the second degree. *Id.* at 1. The trial evidence established that on October 3, 2010 at 1:15 am, a shot was fired into a courtyard at the AK Houses in Upper Manhattan, leading to the death of a seventeen-year-old girl and injuries to another bystander. Pet. Ex. D-1 ("Dec. 29, 2020 Order") at 1, ECF No. 1-16. The People

contended that Brown committed the shooting in retaliation for a robbery that took place hours earlier. *Id.*

On October 27, 2015, Brown filed a motion to set aside his conviction under Article 440 of New York's Criminal Procedure Law (Brown's "440 Motion") on the ground that his trial counsel, Jeffrey Chadbrowe, was ineffective due to a conflict of interest arising from his relationship with Ahmed Salaam, an associate of Brown's. *See* Pet. Ex. A-2, ECF No. 1-2. Brown argued that Salaam paid Chadbrowe to represent Brown at trial, and also hired him to represent Salaam in an unrelated matter. *See id.* Brown's core theory was that Chadbrowe failed to pursue his best defense theory at his trial—that of pointing the finger of guilt at Salaam—due to his relationship with Salaam. *See id.* The New York Supreme Court denied the petition on the papers without holding a hearing. *See* Pet. Ex. A-5, ECF No. 1-5

Brown subsequently appealed both his conviction and the denial of his 440 Motion to the New York Country Supreme Court, Appellate Division. On November 21, 2017, the appellate court affirmed Brown's conviction on direct appeal and affirmed the denial of his 440 Motion. *People v. Brown*, 155 A.D.3d 509 (N.Y. App. Div. 2017), *aff'd in part and rev'd in part*, *People v. Brown*, 33 N.Y.3d 983 (N.Y. 2019); *see* Pet. Ex. B-5, ECF No. 1-10.

The New York Court of Appeals granted leave to appeal on May 7, 2018. *See* Pet. Ex. C-1, ECF No. 1-11. The Court of Appeals then affirmed the judgment of the Appellate Division as to Brown's conviction but reversed it as to the denial of his 440 Motion. *Brown*, 33 N.Y.3d at 986-87; *see* Pet. Ex. C-5, ECF No. 1-15. The Court of Appeals held that a hearing was required to resolve disputed issues of fact as to whether Chadbrowe had a conflict of interest that warranted the setting aside of Brown's conviction. *Brown*, 33 N.Y.3d at 987.

On remand, the New York County Supreme Court held a hearing on the 440 Motion and concluded that Brown had not proven that Chadbrowe "was aware of any facts giving rise to an

actual conflict of interest arising from having received cash from Salaam for his representation of Petitioner." Dec. 29, 2020 Order at 1. Brown appealed to the Appellate Division, which unanimously affirmed the order of the Supreme Court. *People v. Brown*, 211 A.D.3d 440, 441-42 (N.Y. App. Div. 2022); *see* Pet. Ex. D-5 ("Dec. 6, 2022 Order"), ECF No. 1-20. Brown sought leave to appeal to the New York Court of Appeals, but leave was denied. *People v. Brown,* 40 N.Y.3d 950 (N.Y. 2023); *see* Pet. Ex. E-4, ECF No. 1-24.

## LEGAL STANDARDS

The Court's authority to grant the writ of habeas corpus is sharply limited by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Cruz v. Superintendent*, No. 13 Civ. 2414, 2016 WL 2745848, at *5 (S.D.N.Y. May 11, 2016). Specifically, the Court may grant the writ "with respect to any claim that was adjudicated on the merits in State court proceedings" only if (1) the state court's denial of the petitioner's claim "resulted in a decision that was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States"; (2) the state court's denial of relief "resulted in a decision that . . . involved an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States"; or (3) the state court's denial of relief "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

It is well established that a state court decision can be "contrary to" Supreme Court precedent in either of two ways: first, "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or, second, "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Court's]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court unreasonably applies clearly established precedent "if the state court identifies the correct

3

governing legal rule" from the Supreme Court's cases "but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407. Alternatively, "a state-court decision . . . involves an unreasonable application of [Supreme Court] precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.*; *see also Richard S. v. Carpinello*, 589 F.3d 75, 80 (2d Cir. 2009).

Notably, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 410. That is, the issue is not whether the state court committed error, or even clear error, but "whether the state court's application of clearly established federal law [as determined by the Supreme Court] was objectively unreasonable." *Id.* at 409; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."). That threshold is "substantially higher" than incorrectness. *Renico v. Lett*, 559 U.S. 766, 773 (2010). Specifically, where AEDPA applies, federal habeas relief is precluded "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Put differently:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 103. "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings . . . .'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations omitted).

As noted, a federal court may also grant habeas relief under AEDPA if the state court's decision was "based on an unreasonable determination of the facts in light of the evidence

4

presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  But a state court's factual determinations are "presumed to be correct" and may only be rebutted "by clear and convincing evidence." *Parsad v. Greiner*, 337 F.3d 175, 181 (2d Cir. 2003) (quoting 28 U.S.C. § 2254(e)(1)); *accord Bierenbaum v. Graham*, 607 F.3d 36, 48 (2d Cir. 2010).  This requires "substantial deference" to the state court's determinations. *Brumfield v. Cain*, 576 U.S. 305, 314 (2015).  "If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination." *Id.* (cleaned up).  Nor may a federal court characterize a state court's decisions as unreasonable "merely because [it] would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).  That said, "'[e]ven in the context of federal habeas, deference does not imply abandonment or abdication of judicial review,' and 'does not by definition preclude relief.'" *Brumfield*, 576 U.S. at 314 (alteration in original) (quoting *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003)).

## DISCUSSION

Brown argues that because his attorney was paid by a suspect in the crime, it created a non-waivable conflict, and therefore his Sixth Amendment rights were violated.  Pet'r's Mem. at 13-14.  Specifically, Brown first argues that an actual conflict of interest existed because "Chabrowe was personally beholden to Salaam because he was paying Chabrowe's fees for both representations." *Id.* at 15.  Second, Brown argues the conflict was not harmless because "Chabrowe's failure to advance a theory that Salaam was the actual shooter actively harmed Mr. Brown at trial." *Id.* at 16.  Additionally, Brown argues the conflict was not waived "because counsel never alerted Mr. Brown or the trial court to that issue." *Id.* at 18.  The Court concludes that the Appellate Division's December 6, 2022 decision was not contrary to clearly established federal law, based on an unreasonable determination of the facts, or an unreasonable application of federal law.

### I. The Appellate Division's decision was not contrary to clearly established federal law.

To succeed on an ineffective assistance of counsel ("IAC") claim under *Strickland*, a defendant must show that 1) counsel's performance was deficient and 2) that deficient performance prejudiced his defense, *i.e.*, denied him a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the first element, a defendant must identify acts or omissions that fail to meet an objective standard of "reasonably effective assistance . . . under prevailing professional norms." *Id.* at 687-88. Judicial review in this context should be "highly differential" given the range of strategic choices counsel has in presenting a defense. *Id.* at 689. To satisfy the second element, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the trial. *Id.*

In cases involving conflicts of interest, the *Strickland* Court explained that "prejudice is presumed when counsel is burdened by an actual conflict of interest." *Strickland*, 466 U.S. at 692 (citing *Cuyler v. Sullivan*, 446 U.S. 335, 345-50 (1980)). But the Court cautioned that "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Id.* (quoting *Cuyler*, 446 U.S. at 350, 348). "[T]he *possibility* of conflict is insufficient to impugn a criminal conviction." *Cuyler*, 446 U.S. at 350 (emphasis added). A "mere theoretical division of loyalties" is not an actual conflict. *Mickens v. Taylor*, 535 U.S. 162, 171 (2002).

Here, the Appellate Division's decision was not contrary to clearly established federal law as articulated by the Supreme Court. The Appellate Division reasonably articulated the *Strickland* standard as to IAC claims. The court stated that to succeed on his ineffective assistance of counsel

claim, Brown would have to show "that his attorney was subject to a potential conflict that 'actually operated on the defense.'" *People v. Brown*, 211 A.D.3d at 442 (citing *People v. Sanchez*, 991 N.E.2d 698, 702 (N.Y. 2013). The court held that "Salaam's limited role in gathering, contributing to, and delivering cash collectively raised for defendant's legal defense did not create an actual conflict of interest." *Id.* at 441. The Appellate Division's articulation of the standard is consistent with the governing standard for ineffective assistance of counsel claims as set forth above—and certainly not contrary to it.

## II. The Appellate Division's decision was not based on an unreasonable determination of the facts.

The Appellate Division's decision was based upon reasonably determined facts. In evaluating a habeas petition, the state court's factual determinations are presumed to be correct, barring clear and convincing evidence rebutting that presumption. *See Parsad*, 337 F.3d at 181. The Appellate Division explained that the facts adduced at the hearing supported the trial court's conclusion that Salaam did not pay Brown's legal fees:

> The hearing evidence showed that Salaam physically handed cash to defendant's attorney for his retainer and for much of the balance of the fee, but that there was no proof as to the ultimate source of the cash. Counsel credibly testified that he viewed Salaam as his contact person and believed that the legal fees were being collectively raised by a group of defendant's friends and relatives, including Salaam. The court's finding was also supported by defendant's recorded calls made while incarcerated, and the fact that Salaam always delivered cash to the attorney while accompanied by other friends of defendant. The evidence also shows that defendant chose and hired the attorney.

*People v. Brown*, 211 A.D.3d at 441. These facts are presumed to be correct, and Brown has not presented clear and convincing evidence rebutting that presumption. *See Parsad*, 337 F.3d at 181.

The Appellate Division further concluded that "Salaam's limited role in gathering, contributing to, and delivering cash collectively raised for [Brown's] legal defense did not create an actual conflict of interest," explaining:

> [T]he hearing evidence failed to show that defendant and Salaam, although represented by the same lawyer in unrelated cases, had opposing interests in defendant's murder prosecution. Other than Salaam's presence at the scene of the murder, the only evidence connecting him to that crime was essentially rumor. The People unequivocally disclaimed any interest in either prosecuting Salaam for the murder or calling him as a witness against defendant.

*People v. Brown*, 211 A.D.3d at 441-442. These facts, too, are presumed to be correct, and Brown has not rebutted them by clear and convincing evidence.

The Appellate Division ultimately held that Brown had failed to meet the heavy burden of showing that his trial counsel was subject to a potential conflict of interest that actually operated on the defense, stating that "[t]here was no impediment to a defense strategy suggesting that Salaam was the killer." *People v. Brown*, 211 A.D.3d at 442. The Court explained: "The attorney credibly testified that his relationship with Salaam did not affect the strategy he pursued, and that he would have cast the blame for the murder on Salaam if the evidence had supported that theory." *Id.* These facts are also presumed to be correct and are not rebutted by clear and convincing evidence.

Having reviewed the Appellate Division's order with due deference to the factual determinations of the state court, this Court cannot conclude that the decision rested on an unreasonable determination of the facts.

### III. The Appellate Division's decision was not an unreasonable application of clearly established federal law.

The Appellate Division reasonably applied the above facts to the standard articulated by the U.S. Supreme Court for conflict-of-interest claims. *See Strickland*, 466 U.S. at 692. Specifically, the court reasoned that Brown had failed to show by a preponderance of the evidence that "an actual conflict of interest adversely affected his lawyer's performance." *Cuyler*, 446 U.S. at 350.

As noted above, the Appellate Division's decision was based on the trial court's determination that the record did not indicate any "impediment to a defense strategy suggesting that Salaam was the killer," but that there was no evidence in the record connecting Salaam to the murder other than his presence at the scene. *Brown*, 211 A.D.3d at 441-442.  In applying the law to these facts, the Appellate Division concluded that Brown failed to meet his burden of showing that trial counsel was subject to a potential conflict of interest that actually operated on the defense. *Id.* at 442.  This was a reasonable application of the law.

To hold otherwise, this Court would have to find in the reasoning of the Appellate Division an error "beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings.'" *Cullen*, 563 U.S. at 181.  Even if this Court disagreed with the Appellate Division's application of the facts, it can identify no clear error that would meet this highly deferential standard.

## CONCLUSION

For the reasons stated above, Brown's Petition must be **DENIED** and is **DISMISSED**.  His Letter Motion for Oral Argument (ECF No. 14) is **DENIED** as moot.  As Brown has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.  *See* 28 U.S.C. § 2253(c)(2); *see also, e.g.*, *Matthews v. United States*, 682 F.3d 180, 185 (2d Cir. 2012).  The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated: September 16, 2025

      New York, New York

DALE E. HO
United States District Judge